UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60554-GAYLES/STRAUSS

CLEAR SPRING PROPERTY
AND CASUALITY COMPANY,

      Plaintiff,

v.

BLUEWATER ADVENTURES OF SARASOTA,

      Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

THIS MATTER came before the Court upon Defendant Bluewater Adventures of Sarasota's Motion to Dismiss ("Motion") [DE 10]. I have reviewed the Motion, the Response and Reply thereto [DE 31, 38], and all other pertinent portions of the record. For the reasons discussed herein, I respectfully recommend that the Motion [DE 10] be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

In November 2019, Defendant purchased insurance for its vessel, a 2004 82' Sunseeker ("Vessel"), from Plaintiff. *See* Complaint [DE 1] ¶¶ 9, 26-36. Defendant renewed its insurance policy with Plaintiff in November 2020 and again in November 2021. *Id.* ¶¶ 38, 40. In December 2021, the Vessel sustained damages when it struck several coral heads in the Bahamas. *Id.* ¶ 14. At the time, Captain Garron Burger was operating the Vessel. *Id.* ¶ 10. His navigation errors caused – or at least contributed to – the loss. *Id.* ¶ 25.

---

[1] This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and a report and recommendation on all dispositive matters [DE 47].

When Defendant initially went through the process of purchasing insurance coverage from Plaintiff in November 2019, it submitted an application for insurance on November 22, 2019. *Id.* ¶ 26. On November 25, 2019, Plaintiff's Managing General Agent provided a quotation. *Id.* ¶ 27. The quotation indicated it was subject to an out-of-water survey. *Id.* Consequently, on the same day the quotation was provided (November 25, 2019), Plaintiff submitted a survey that had been prepared by Sean Meagher of Patton Marine Surveyors and Consultants on November 18, 2019. *Id.* ¶ 28; [DE 1-4]. The survey indicates that "there are 10 pages of recommendations which are an integral part of the report and should be read in conjunction with" it. Complaint ¶ 29; [DE 1-4] at 1. In addition to submitting the survey on November 25, 2019, Defendant also submitted a 3-page "Recommendations" document, dated October 10, 2019. Complaint ¶ 30; [DE 1-5].

The following day (November 26, 2019), Defendant made a request to bind coverage and submitted an 11-page "Recommendations" document, dated November 10, 2019. Complaint ¶ 31; [DE 1-6]. In conjunction therewith, and as part of its original application, Defendant submitted a Letter of Survey Recommendations Compliance ("LOC"). Complaint ¶¶ 32, 45; [DE 1-7]. The LOC, which was signed on November 25, 2019, references an October 10, 2019 survey by Patton Marine Surveyors and certifies compliance with all recommendations in the survey pertaining to the Vessel. *See* Complaint ¶¶ 32-34; [DE 1-7]. The LOC also warns, above the signature block, that "[a]ny misrepresentation in [the LOC] may render insurance coverage null and void from inception." Complaint ¶ 35; [DE 1-7].

Consequently, a commercial yacht insurance policy, effective from November 26, 2019 to November 26, 2020, was issued to Defendant. Complaint ¶ 36. As indicated above, Defendant renewed the policy in November 2020 and November 2021. The policy in place at the time of the December 2021 incident in the Bahamas (the "Subject Policy") [DE 1-9] had an effective date

2

range of November 26, 2021 to November 26, 2022. Complaint ¶ 40. At the time of both the 2020 and 2021 renewals, Defendant assured there were no changes to the policy during the previous policy period and no changes since the submission of Defendant's original application form. *Id.* ¶¶ 38, 40, 45; [DE 1-8, 1-10]. In this vein, the Renewal Questionnaire Defendant submitted in both 2020 and 2021 verified certain information and then included an "Other Changes" section providing as follows:

> When quoting your renewal, we have assumed that there have been no changes to your policy during the current policy period. If there are any other changes since your original application form was submitted to us, please give details below. If you are unsure whether any change might have an influence upon the quotation that we have provided you with, please contact your broker for advice.

[DE 1-8; 1-10].

Notwithstanding the foregoing, Defendant never actually remedied the issues noted in the November 10, 2019 Recommendations. Complaint ¶¶ 42, 43, 47. In other words, the issues noted therein – at least most of the issues – remained outstanding at the time of the December 2021 incident with the Vessel. Defendant, however, never advised Plaintiff – at the time of either renewal or at any other time – that any of the recommendations had not been addressed. *Id.* ¶ 46. Therefore, Plaintiff alleges that Defendant misrepresented compliance with the requirements of the survey. *Id.* ¶¶ 41, 47, 53-54, 59-60. For this reason and others, Plaintiff seeks a declaration that the Subject Policy was void from inception and/or that no insurance coverage exists for the loss sustained from the December 2021 incident. In its Complaint, Plaintiff includes the following four counts: (I) Uberrimae Fidei; (II) Breach of General Condition L; (III) Breach of General Condition Q; and (IV) Breach of Operator Warranty.

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). When a claim sounding in fraud is alleged, the complaint "must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citation omitted). To do so, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted).

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th

Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).[2] Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

### I.     COUNTS I (Uberrimae Fidei) & II (Breach of General Condition L)

"[T]he marine insurance doctrine of *uberrimae fidei* is the controlling law of this circuit." *Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1270 (11th Cir. 2020) (quoting *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000)). It is "the controlling federal rule even in the face of contrary state authority." *Id.* (quoting *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984)). The *uberrimae fidei* doctrine, "which embodies the 'highest degree of good faith,'" requires an insured under a marine insurance contract to "fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *Id.* at 1271 (quoting *HIH Marine*, 211 F.3d at 1362). The insured's "duty to disclose extends to those material facts not directly inquired into by the insurer." *Id.* (quoting *HIH Marine*, 211 F.3d at

---

[2] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments." (citation omitted)).

5

1362). It encompasses "all material facts that are 'within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge.'" *Id.* (quoting *Steelmet*, 747 F.2d at 695).

"[U]nder *uberrimae fidei*, an insured's material misrepresentation to an insurer renders a marine insurance policy void *ab initio*. *Id.* (citing *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1303 (11th Cir. 2015)). "The policy is void even if the insured's misrepresentation was the result of 'mistake, accident, or forgetfulness,' or the insurer did not inquire about the particular material fact the insured failed to disclose." *Id.* (citing *HIH Marine*, 211 F.3d at 1362-63). Materiality is considered from an objective standpoint. *See id.* It is examined "from a reasonable insurer's perspective, asking whether a particular fact 'could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Id.* (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir. 1986)).

In the same vein as the doctrine of *uberrimae fidei*, General Condition L provides that "[t]his contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision." [DE 1-9] at 13. As at least one other judge in this district recognized in considering the same language, "the language in General Condition L of the Policies embodies the doctrine of *uberrimae fidei* and therefore principles of the same apply to the instant action as a matter of law." *Great Lakes Ins. SE v. Sunset Watersports, Inc.*, 570 F. Supp. 3d 1252, 1264 (S.D. Fla. 2021).

Likewise, the parties largely treat Counts I and II the same for purposes of the instant Motion. In fact, with the exception of one additional argument raised concerning Count I, the

Motion raises the same arguments for dismissal of Counts I and II.[3] First, Defendant contends that these counts are subject to dismissal because they are based on alleged misrepresentations made in connection with the placement of the initial policy in 2019, not ones made in connection with the placement of the Subject Policy in 2021. Second, Defendant contends that the LOC only certified compliance with the October 10, 2019 Recommendations document, not the November 10, 2019 Recommendations document. In other words, Defendant's position is that Counts I and II should be dismissed because the LOC attached to the Complaint reveals that Defendant never represented that it complied with the outstanding issues set forth in the November 2019 Recommendations document. Third, Defendant claims that Plaintiff failed to plead Counts I and II with particularity in accordance with Rule 9(b). Fourth, Defendant argues that Plaintiff failed to allege materiality. Finally, with respect to Count I only, Defendant contends that Plaintiff failed to allege actual reliance. As discussed herein, Defendant's actual reliance and Rule 9(b) arguments fail, and Defendant's other arguments for dismissal of Counts I and II do not warrant dismissal, at least at this stage.

### A. Timing of Alleged Misrepresentations

According to Defendant, Counts I and II of the Complaint only allege misrepresentations made around the time the initial policy was issued in November 2019, and not in connection with the placement of the Subject Policy in November 2021. Because no misrepresentations were allegedly made in connection with binding coverage under the Subject Policy, Defendant contends that Counts I and II are subject to dismissal.

---

[3] Defendant contends that Count III should also be dismissed for the same reasons as Counts I and II. However, Count III, which is discussed in Part II below, is not based on misrepresentation like Counts I and II. Thus, it is unclear why the arguments for dismissal of Counts I and II would apply to Count III. At any rate, as discussed herein, Defendant's arguments for dismissal of Counts I and II should be denied.

Relevant to this argument, the "Other Changes" section of the Renewal Questionnaire pertaining to the Subject Policy provides:

> When quoting your renewal, we have assumed that there have been no changes to your policy during the current policy period. If there are any other changes since your original application form was submitted to us, please give details below. If you are unsure whether any change might have an influence upon the quotation that we have provided you with, please contact your broker for advice.

[DE 1-10]. Notwithstanding the foregoing, Defendant contends that the Complaint does not identify "either any material changes (1) to the policy during the prior policy period or (2) to the information supplied by Bluewater in the 'original application form.'" [DE 10] at 9. I agree with Defendant that the Complaint does not allege any changes between the Subject Policy and the immediately preceding policy. However, contrary to Defendant's argument, the Complaint does allege changes since the original application form.

As an initial matter, while Defendant contends the Complaint does not identify changes to the information supplied *in the* original application form, the Other Changes section of the Renewal Questionnaire [DE 1-10] refers to changes *since* the submission of the original application form. Moreover, the Complaint alleges that the LOC was submitted as part of Defendant's original application. Complaint ¶ 45. While Defendant contends otherwise, [DE 10] at 8, the Court cannot conclude otherwise in light of the allegations of the Complaint, which must be accepted as true at this stage. Regardless, even if not submitted as part of the original application, the LOC was submitted around the time of the original application form, and the Renewal Questionnaire plainly covers changes *since* the submission of the original application form. Furthermore, subsection 9.b of the General Conditions & Warranties section of the Subject Policy provides that "[t]his insuring agreement incorporates in full your application for insurance . . . ." Thus, accepting as true Plaintiff's allegation that the LOC was submitted as part of that

8

application, and viewing reasonable inferences in Plaintiff's favor, the alleged material misrepresentations here allow Plaintiff to survive Defendant's first argument for dismissal.

### B. LOC's Certification of Compliance with Recommendations

As discussed above, in the Complaint, Plaintiff references two sets of Recommendations. The first set [DE 1-5], which is dated October 10, 2019, was submitted on November 25, 2019. Complaint ¶ 30. The second set [DE 1-6], which is dated November 10, 2019, was submitted on November 26, 2019. Complaint ¶ 31. The LOC, which was submitted "[i]n combination with the bind request and the second set of 'Recommendations,'" Complaint ¶ 32, certified "that all recommendations pertaining to the [Vessel] contained within the detailed survey submitted herein, have been complied with, other than those listed below . . . ." [DE 1-7]. As no outstanding recommendations were listed, Defendant certified compliance with "all recommendations pertaining to the [Vessel] contained within the" survey.

The issue becomes whether the LOC certified compliance with the second set of recommendations dated November 10, 2019. That is because, as Defendant correctly notes, the Complaint does not allege that any of the October 10, 2019 recommendations were not completed. It only alleges that "many" of the November 10, 2019 recommendations were not completed. *See* Complaint ¶¶ 42, 43, 47.

Accepting the allegations of the Complaint as true, and viewing reasonable inferences in the light most favorable to Plaintiff, I find that the LOC attached to the Complaint plausibly certified compliance with both sets of recommendations – including the November 10, 2019 set of recommendations. Defendant's argument to the contrary – i.e., Defendant's argument that the LOC did not certify compliance with the November 10, 2019 recommendations – seems to be based on two facts. First, Defendant notes that the LOC only refers to an October 10, 2019 survey

by Patton Marine Surveyors. Second, Defendant contends that because the LOC was signed on November 25, 2019, the day before the submission of the November 10, 2019 recommendations, the LOC could not have been certifying compliance the November 10, 2019 recommendations.

While Defendant's proffered inferences are reasonable, the Court must draw reasonable inferences in Plaintiff's favor at this stage. Here, the Complaint only indicates that one survey was prepared and submitted when Defendant purchased coverage from Defendant, and that survey indicates it was prepared (by Patton Marine Surveyors) on November 18, 2019. *See* Complaint ¶ 28; [DE 1-4]. By that time, both sets of recommendations had been prepared. Notably, the survey indicates that "there are **10** pages of recommendations which are an integral part of this report and should be read in conjunction with this text." [DE 1-4] at 1 (emphasis added). Thus, the survey appears to be referencing the November 10, 2019 set of recommendations, which is 11 pages, as opposed to the 3-page set of recommendations dated October 10, 2019. In fact, the 11-page set of recommendations appears to be a more fulsome version of the 3-page set of recommendations.

Additionally, the fact that the LOC is dated November 25, 2019 is of no moment (at least at this stage). The LOC plainly certified compliance with all survey recommendations pertaining to the Vessel, and the November 10, 2019 set of recommendations pre-dates the November 18, 2019 date of the survey. Likewise, the November 10, 2019 set of recommendations pre-dates the November 25, 2019 date of the LOC. Even though the November 10, 2019 recommendations were not submitted until November 26, 2019, they plainly existed for more than 2 weeks at the time the LOC was signed. Moreover, although the LOC indicates it was signed on November 25, 2019, the Complaint indicates that the LOC was submitted along with the second set of recommendations on November 26, 2019. *See* Complaint ¶ 32. Thus, it is reasonable to infer that

the LOC certified compliance with the November 10, 2019 set of recommendations. As such, Defendant's second argument for dismissal fails.

### C. Pleading with Particularity

Defendant contends that Plaintiff failed to allege with particularity any facts to support Plaintiff's allegation that Defendant did not complete the recommended repairs that Defendant certified it completed. Specifically, Defendant argues that Plaintiff failed to allege who determined that Defendant did not complete the repairs, when that determination was made, and how the determination was made.

Assuming (without deciding) that the heightened pleading standard under Rule 9(b) applies to Counts I and II,[4] the allegations of the Complaint are sufficient to satisfy that standard. As noted above, when Rule 9(b) applies, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Cisneros*, 972 F.3d at 1216 (citation omitted).[5] Here, Plaintiff has pointed to the LOC and Renewal Questionnaire, the exact documents in which the alleged misrepresentations were made. Both documents, which are attached to the Complaint, reveal the precise representations that were made, who made them, and when they were made. Contrary to Defendant's argument, nothing requires Plaintiff to spell out in the Complaint how and when it determined the representations were false. Also, the allegations of the Complaint are

---

[4] *See AIG*, 782 F.3d at 1303 n.7 (declining to decide whether an *uberrimae fidei* claim must be pled with particularity).

[5] Even assuming Rule 9(b) applies in some respect, it is questionable whether the third and fourth requirements apply given that, as discussed at the outset of Section I above and in Section I.E below, an *uberrimae fidei* claim only requires showing a misrepresentation that is material (from an objective standpoint) and not actual reliance.

11

sufficient to show that the alleged misrepresentations caused Plaintiff to issue an insurance policy and renew coverage on, at a minimum, more favorable terms than it would have had it known the representations were not true. *See* Complaint ¶¶ 55, 61. Similarly, these allegations show that Defendant obtained, at a minimum, insurance coverage that cost less than it would have absent Defendant's alleged misrepresentations. Therefore, Defendant's argument that Plaintiff failed to satisfy Rule 9(b) should be rejected.[6]

### D. Materiality

As noted above, under both the doctrine of *uberrimae fidei* and General Condition L of the Subject Policy, an omission or misrepresentation must be *material* to render the Subject Policy void. In the Motion, Defendant argues that Plaintiff failed to allege facts to demonstrate materiality and instead included only conclusory allegations regarding materiality in the Complaint. However, Defendant fails to point to any cases showing that more detailed allegations regarding materiality are required at the pleading stage. For instance, Defendant relies on a case that states that "[a]fter-the-fact, conclusory statements by the insurer that a certain fact was material and would have affected its decision to insure are not enough." *State Nat. Ins. Co. v. Anzhela Explorer, L.L.C.*, 812 F. Supp. 2d 1326, 1353 (S.D. Fla. 2011) (citations omitted). But, as Plaintiff notes, that case was decided following a bench trial, not at the pleading stage.[7] That is significant.

---

[6] Defendant also contends that Plaintiff failed to allege facts demonstrating intent to deceive. However, "under *uberrimae fidei*, an insured's material misrepresentation to an insurer renders a marine insurance policy void . . . *even if the insured's misrepresentation was the result of 'mistake, accident, or forgetfulness*,' or the insurer did not inquire about the particular material fact the insured failed to disclose." *Quintero*, 983 F.3d at 1271 (emphasis added) (internal citations omitted). Moreover, even assuming Rule 9(b) applies, it allows intent and other conditions of a person's mind to be alleged generally.

[7] *Cf. Savino v. Federated L. Grp., PLLC*, No. 18-60956-CIV, 2018 WL 7917058, at *3 (S.D. Fla. Aug. 9, 2018) (declining to decide whether a misrepresentation was material at the motion-to-dismiss stage where the defendant failed to cite authority supporting its argument that the court should address materiality at that stage).

Materiality presents a mixed question of law and fact that "involve[s] assessments peculiarly within the province of the trier of fact." *AIG*, 782 F.3d at 1303 (citation omitted). "[A] materiality determination requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019) (internal quotation marks and citation omitted). For this reason, the Eleventh Circuit has held in the securities-fraud context that a motion to dismiss should not be granted on materiality grounds unless an alleged misrepresentation is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.* (citation omitted).

Thus, in the context of this case, dismissal on materiality grounds seems at least as – if not more – inappropriate at this juncture given that the ultimate materiality inquiry (when deciding the merits) turns on whether a fact could "*possibly influence* the mind of a prudent and intelligent insurer in determining whether he would accept the risk." *AIG*, 782 F.3d at 1303 (quoting *Kilpatrick Marine*, 795 F.2d at 942-43) (emphasis added). At least one other court has found that it is improper to grant a motion to dismiss on materiality grounds in the *uberrimae fidei* context. *See Thomas v. NASL Corp.*, No. 99CIV.11901(JGK), 2000 WL 1725011, at *6 (S.D.N.Y. Nov. 20, 2000). And as Plaintiff notes, several cases in this district have found it premature or otherwise improper to dispose of other types of claims on materiality grounds at the motion-to-dismiss stage. *See* [DE 31] at 16. Accordingly, and because Defendant fails to point to any case law requiring more detailed allegations regarding materiality at the pleading stage, Defendant's materiality argument does not warrant dismissal at this stage.

### E. Actual Reliance

Citing an Eighth Circuit case, Defendant argues that "[f]ederal courts have held that 'actual reliance' and 'objective materiality' are 'distinct elements' of a *uberrimae fidei* claim." [DE 10] at 16 (citing *St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715, 722 (8th Cir. 2015)). While true that the Eighth Circuit did so hold, I find, based on Eleventh Circuit case law, that actual reliance is not an element of an *uberrimae fidei* claim. The Eleventh Circuit has explained that *uberrimae fidei* will render an "insurance policy void ab initio if (1) [the insured] made a misrepresentation to [the insurer] and (2) that misrepresentation was material." *AIG*, 782 F.3d at 1303. In other words, as the First Circuit has held (contrary to the Eighth Circuit), "the materiality of a false statement or an omission, *without more*, provides a sufficient ground for voiding such a policy." *QBE Seguros v. Morales-Vazquez*, 986 F.3d 1, 8 (1st Cir. 2021) (emphasis added) (citations omitted). Actual reliance is therefore not required. *See id.* at 8-10. Notably, in *QBE Seguros*, the First Circuit found, like I do, that actual reliance is not an element of an *uberrimae fidei* claim under Eleventh Circuit case law. *See id.* at 9. Therefore, Defendant's actual reliance argument fails.[8]

### II. COUNT III (Breach of General Condition Q)

Count III of the Complaint should be dismissed. General Condition Q of the Subject Policy provides as follows:

> q. Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all

---

[8] Moreover, as Plaintiff notes, even if actual reliance was required, it is reasonable to infer actual reliance based on the allegations of the Complaint. *See* Complaint ¶ 55 ("Clear Spring would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had it known the facts set forth above as to the Survey.").

14

> such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either:
>
> i. The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyor's) satisfaction prior to any loss and/or claim
>
> Or,
>
> ii. The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

[DE 1-9] at 14. In Count III, Plaintiff alleges that it was provided with the November 2019 survey prior to issuing the Subject Policy, that the survey identified 11 deficiencies, and that the deficiencies were not addressed prior to the December 2021 incident with the Vessel. Complaint ¶¶ 65, 66, 68. Therefore, Plaintiff alleges that Defendant violated General Condition Q. *Id.* ¶ 69.

In the Motion, Defendant contends that, based on General Condition Q's clear and unambiguous language, General Condition Q only applies if a survey is requested in connection with the application for the Subject Policy. However, Defendant notes that Plaintiff did not make such a request. Plaintiff responds that General Condition Q is not limited to surveys requested in connection with the current policy period and that Defendant is improperly trying to add words to General Condition Q. In this regard, Plaintiff points to a case noting that "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (citation omitted).[9] The problem here is that it is Plaintiff's interpretation that would improperly add words to, or otherwise distort the meaning of, General Condition Q.

---

[9] The parties agree that New York law applies here.

Here, the relevant language of General Condition Q is plain and unambiguous.[10] General Condition Q is only triggered "if we request a survey of the Scheduled Vessel." However, as an initial matter, Plaintiff does not allege that it requested a survey. The Complaint simply provides that a survey – the only survey alleged to exist in the Complaint – was provided years earlier in November 2019. Moreover, even if Plaintiff had alleged that it requested a survey in 2019, that does not trigger General Condition Q of the *Subject Policy*. Finding otherwise would require improperly writing additional words into General Condition Q – *e.g.*, "if we request [*or ever previously requested*] a survey of the Scheduled Vessel." Additionally, as Defendant indicates, the fact that the plain language of General Condition Q provides for the receipt of a survey within 30 days of the effective date of the Subject Policy further demonstrates that General Condition Q is referring to a request made sometime shortly before or around the effective date of the Subject Policy, not years earlier (and not two policies ago).

---

[10] Therefore, the Court may resolve Defendant's challenge to Count III at the motion-to-dismiss stage. *See Rothberg v. Phil's Main Roofing, LLC*, No. 14-CV-10195 (NSR), 2017 WL 1162904, at *6 (S.D.N.Y. Mar. 24, 2017) ("At the motion to dismiss stage, the court should resolve any contractual ambiguities in favor of the plaintiff. However, if provisions of the contract are unambiguous, the court interprets those provisions as a matter of law, and must interpret the contract in order to effectuate its plain language." (citation omitted) (cleaned up)); *Redd v. Connecticut Gen. Life Ins. Co.*, No. 09 CIV. 4511 (AKH), 2009 WL 10740303, at *1 (S.D.N.Y. Nov. 2, 2009) ("If a contract is unambiguous on its face, its interpretation is a question of law properly resolved on a motion to dismiss." (citations omitted)); *Mktg./Trademark Consultants, Inc. v. Caterpillar, Inc.*, No. 98 CIV. 2570 (AGS), 2000 WL 648162, at *3 (S.D.N.Y. May 19, 2000) ("If the contract 'shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate.'" (citations omitted)); *see also Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019) (finding district court did not err in interpreting unambiguous contract at motion-to-dismiss stage); *Martinair Holland, N.V. v. Benihana, Inc.*, 780 F. App'x 772, 775 (11th Cir. 2019) ("While courts applying Florida law have acknowledged that contract interpretation is typically inappropriate at the motion to dismiss stage for failure to state a claim, they will engage in such interpretation where the contract terms are unambiguous." (citation and internal quotation marks omitted) (cleaned up)).

Because the plain and unambiguous language of General Condition Q shows "that the relief prayed for [in Count III] is not merited, dismissal [of Count III] is both justified and appropriate." *Mktg./Trademark Consultants*, 2000 WL 648162, at *3.

### III.    COUNT IV (Breach of Operator Warranty)

The Subject Policy contains a warranty providing that it is "[w]arranted that a professional, licensed captain must be on board whenever the Scheduled Vessel is navigating." [DE 1-9] at 2. In Count IV, Plaintiff alleges that Defendant violated this warranty because the Vessel is the type of vessel that must be under the control of an individual credentialed by the Coast Guard, and Captain Burger is not credentialed by the Coast Guard. *See* Complaint ¶¶ 71-77.

In the Motion, Defendant contends that Count IV should be dismissed because Defendant disclosed Captain Burger's qualifications and credentials to Plaintiff prior to the issuance of the Subject Policy (and prior to the December 2021 incident), and because Plaintiff consequently approved Captain Burger as an operator for the Vessel.[11]  Plaintiff concedes in its Response that Captain Burger was approved as a named operator but contends that Defendant "was still required to have a professional, licensed captain aboard while the vessel was navigating in accordance with the Policy's language." [DE 31] at 15.

I agree with Plaintiff that Defendant's argument in the Motion fails (at least at this stage). Defendant's argument in the Motion seems to be based on either of two premises. Defendant equates the terms "named/approved operator" and "professional, licensed captain" (or at least implies that the criteria Plaintiff applies to approving an "operator" equal the definition of "professional, licensed captain"). Alternatively, Defendant implies that, even if Captain Burger

---

[11] Defendant points to two attachments to the Complaint to demonstrate the disclosure of Captain Burger's credentials and Plaintiff's approval of him as an operator.

would not otherwise satisfy the "professional, licensed captain" requirement, his approval as a named operator (by Plaintiff) effectively obviates the need to have a professional, licensed captain on board when Captain Burger is operating the Vessel. However, the Court cannot accept either premise at this stage. While perhaps similar (as used in this context), "operator" and "professional, licensed captain" are not the same terms, and Defendant provides no explanation for why they necessarily mean the same thing here. Moreover, assuming that it is reasonable to infer that the criteria for "operator" and the criteria for "professional, licensed captain" are the same, the Court cannot draw that inference in Defendant's favor at this stage. That is because Defendant is the moving party, and the position of the non-moving party (Plaintiff) is reasonable. For the same reason, assuming that it is reasonable to infer that having a named operator on board obviates the need to have a "professional, licensed captain" on board, the Court cannot draw that inference in Defendant's favor either. Accordingly, the sole argument raised in the Motion for dismissal of Count IV fails.[12]

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 10] be **GRANTED IN PART and DENIED IN PART** and that Count III of the Complaint be **DISMISSED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable

---

[12] I note that Defendant's Reply raises a new argument for dismissal that was not raised in the Motion. *See* [DE 38] at 9 (arguing that "the purported requirement that Captain Burger must be licensed *under the Coast Guard regulations* is not in the policy" (emphasis added)). I do not address that argument because it is improper to raise an argument for the first time in a reply. *See United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court.").

Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 6th day of December 2022.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge